OPINION
On December 31, 1998, Albert L. Montgomery was arrested on charges of carrying a concealed firearm, in violation of R.C.2923.12(A); and, with falsification, in violation of R.C. 2921.13. Because Mr. Montgomery was still a few weeks shy of his eighteenth birthday, the charges were ultimately processed in the Juvenile Branch of the Franklin County Court of Common Pleas, Division of Domestic Relations. He was held in detention pending hearings on the charges. Counsel was appointed to represent him.
The charges were originally scheduled for trial on January 6, 1999, but were continued to January 13, 1999 at the request of counsel. The trial was then continued to January 26, 1999 due to a weather emergency which closed the court.
A trial was conducted before a magistrate on the January 26th date and the magistrate issued a magistrate's decision finding Mr. Montgomery to be a delinquent minor as a result of violating the statutes set forth above. The case was set for a dispositional hearing on February 2, 1999.
Following the dispositional hearing, the magistrate issued a second decision, reaffirming the findings that Mr. Montgomery was a delinquent minor. Mr. Montgomery was ordered to be institutionalized for an indefinite term in the Ohio Department of Youth Services ("DYS") as a result of the adjudication with respect to carrying a concealed firearm. No further sanctions were imposed as a result of the falsification adjudication.
At some point in time between the continuance which occurred on January 6, 1999 and the later hearing dates, an attorney other than the one originally appointed began appearing as counsel on Mr. Montgomery's behalf, apparently having also been appointed to represent Mr. Montgomery. Neither attorney filed objections to the magistrate's decisions. Neither attorney pursued a direct appeal of his adjudication of delinquency or of his commitment to DYS.
On June 29, 1999, Mr. Montgomery filed his own motion seeking leave to pursue a delayed appeal. A panel of this court ultimately granted leave for a delayed appeal. By that time, the Office of the Franklin County Public Defender had assumed responsibility for representing Mr. Montgomery. Transcripts of the adjudicatory and dispositional hearings were prepared and are included in the record on appeal.
Appellate counsel has assigned three errors for our consideration:
ASSIGNMENT OF ERROR NUMBER ONE:
 THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE APPELLANT ON THE CHARGE OF CARRYING A CONCEALED WEAPON WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN THE CONVICTION AND THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED.
ASSIGNMENT OF ERROR NUMBER TWO:
 THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE APPELLANT ON THE CHARGE OF FALSIFICATION WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN THE CONVICTION.
ASSIGNMENT OF ERROR NUMBER THREE:
 THE MAGISTRATE IMPROPERLY ADMITTED AND USED HEARSAY EVIDENCE TO CONVICT THE APPELLANT OF THE OFFENSE OF CARRYING A CONCEALED WEAPON.
The initial issue confronting us is the impact of the failure of trial counsel to object to either of the magistrate's decisions. Juv.R. 40 governs the use of magistrates in juvenile court. Juv.R. 40(E)(3)(b) states:
 * * * A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule.
The state relies on the well-established rule that such a failure to comply with Juv.R. 40 generally results in waiver of any related issues on appeal.
For the reasons set forth below, we deem the circumstances of this case to warrant exercise of our discretion to invoke Crim.R. 52(B), which provides:
 Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. [Emphasis added.]
Blind enforcement of the procedural rule at issue would essentially result in a determination that attorneys who fail to represent indigent minors diligently have the power to deprive their clients of appellate review of delinquency adjudications which can cause the minors to be institutionalized for years. The due process problems inherent with enforcing the rule are readily apparent, especially in the context of juvenile court proceedings where the right to a jury trial and other procedural rights guaranteed to adults are radically curtailed.
To provide an example, Mr. Montgomery was held in custody for almost four weeks before his trial based upon a finding that:
The child should be held in detention.
* * *
 The parent is not willing or able to provide supervision and return the child to court for further hearing.
Had Mr. Montgomery been arrested less than three weeks later, he would have faced incarceration for no more than eighteen months on the carrying a concealed firearm charge. He would have had a right to a reasonable bond as guaranteed by the Ohio Constitution. He would have had the right to a jury trial, as noted above. Since Mr. Montgomery was arrested before his eighteenth birthday, he faced twice the period of institutionalization with half the rights guaranteed an adult. We cannot, consistent with the due process guarantees of the Ohio and United States Constitutions, deny appellate review of Mr. Montgomery's delinquency adjudications and incarceration. Instead, we are compelled to grant him full appellate review.
The first and second assignments of error challenge the sufficiency and weight of the evidence to support the delinquency adjudications. Such challenges require us to review the evidence presented at the adjudicatory hearing.
We first set forth the standards by which we are bound in reviewing the evidence. In State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, the Supreme Court held:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia
[1979], 443 U.S. 307 ***, followed.) [Emphasis added.]
In contrast to the "sufficiency" analysis, the "weight of the evidence" analysis is somewhat different. In State v. Thompkins
(1997), 78 Ohio St.3d 380, 386, the Supreme Court explained the distinction:
 Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. * * * Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence
sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.)
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. * * * ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.") [Citations omitted.]
One very important difference between the two concepts lies in the net result: a finding of insufficiency precludes retrial; a finding that a conviction/delinquency adjudication is against the manifest weight of the evidence does not.
We turn now to the record to ascertain whether the evidence adduced at trial is sufficient to sustain the delinquency adjudications.
Columbus police were dispatched to a residence in the Hilltop area of Columbus on a report of a hostage situation. When Officer Suzanne Mills and other officers responded to the call, they were met by the man who had made the hostage report. The man indicated that the individual in the living room wearing a yellow shirt had a gun. The individual in the yellow shirt was either asleep or unconscious.
Officer Mills moved the hand of the young man who was asleep to look for weapons. When the young man's arm slid down to his side, she saw the butt of a gun at his side. The gun was seized and found to be a .45 caliber semi-automatic pistol. The weapon was loaded and later determined to be operable.
The young man was awakened and handcuffed. He claimed his name was "Shawan" Montgomery with a birth date of January 16, 1980. He was transported to the Franklin County Corrections Center. However, upon arriving there, he informed the officers that he was not really Shawan Montgomery. Instead, he was Albert Montgomery, a juvenile. As a result, he was ultimately turned over to juvenile authorities.
Albert Montgomery testified at his trial and acknowledged that he was asleep in a black leather chair when the police officers arrived. He was wearing a yellow t-shirt and blue jeans. He was awakened by police officers shining a flashlight in his face. He denied knowing that there was a gun beside him and denied that the gun was his. He also disputed the location of the gun as described by Officer Mills.
Albert Montgomery's mother, Sharon Montgomery, also testified at trial. She indicated that she was sure Albert did not carry a gun. She acknowledged that Albert had spent very little time at her home during the week before his arrest.
R.C. 2923.12(A) reads:
 (A) No person shall knowingly carry or have, concealed on his or her person or concealed ready at hand, any deadly weapon or dangerous ordnance.
"Knowingly" is defined by R.C. 2901.22(B) as follows:
 (B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
In the context of Mr. Montgomery's case, the last sentence of the definition of "knowingly" applies. In order to be guilty, Mr. Montgomery had to be aware that he had a firearm concealed ready at hand.
The testimony at trial clearly indicated that he and most of the other occupants of the residence were soundly asleep when as many as ten police officers responded to what had been reported as a hostage situation. Mr. Montgomery was so sound asleep that he did not awaken when Officer Mills moved his hands in search of a firearm. At that point in time, he was not aware of anything, unless it was his dreams. He clearly was notknowingly concealing a weapon while asleep.
We do not know the position of Mr. Montgomery's hands or even the exact location of the weapon when Mr. Montgomery fell asleep. Indeed, the initial report of a hostage situation is not consistent with a concealed weapon, but rather a brandished weapon.
Under the circumstances, the evidence was not sufficient to establish that Mr. Montgomery ever knowingly had a weapon concealed ready at hand. Accordingly, the evidence adduced at trial was insufficient as a matter of law to sustain the weapon charge. Since there was insufficient evidence to establish the elements of the offense, the adjudication was also necessarily against the manifest weight of the evidence. Therefore, the first assignment of error is sustained.
In his second assignment of error, counsel argues that the officer who was allegedly deceived in the falsification charge was not a witness at trial and was not the subject of any testimony, so the evidence was not sufficient to sustain a conviction.
The charging affidavit reads:
 Albert L. Montgomery did knowingly make a false statement when the statement to wit; his name was Shajuan Montgomery D.O.B. 1-16-80 was made with purpose to mislead a public official, to wit; H.E. Cormack #1129 CPD in the performance of his official function, to wit arresting Albert for the above listed charge in violation of Section 2921.13 A-3 of the Ohio Revised Code M-1
Although the argument made on behalf of Mr. Montgomery might apply in other situations, the argument is not persuasive here. Mr. Montgomery lied about his identity and date of birth to all the officers present. This lying resulted in him being improperly processed as an adult and being transported to an adult detention facility. After his true identity was discovered, he had to be completely reprocessed through Columbus Police Headquarters and transported to a juvenile detention facility. His statements were made to deceive all the officers involved in processing his arrest and charging. His statements succeeded in doing so. His conduct was a violation of R.C. 2921.13(A)(3), which reads:
 (A) No person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when any of the follow applies:
* * *
 (3) The statement is made with purpose to mislead a public official in performing the public official's official function.
The second assignment of error is overruled.
In light of our ruling on the first assignment of error, the third assignment of error could simply be considered moot; however, we summarily address and overrule it. The statement made by the occupant of the residence was admitted only for the limited purpose of explaining why the officer did what she did. The statement was not admitted for the truth of the matter asserted, so it was not hearsay. See Evid.R. 802. Accordingly, the statement was properly admitted.
The record before us does not establish that the magistrate consciously used the statement outside the limited scope of use she described in admitting the statement. Thus, the assignment of error has no merit and, as indicated, is overruled.
In summary, the first assignment of error is sustained, but the second and third assignments of error are overruled. As a result, the judgment of the juvenile court is reversed as to the carrying a concealed firearm adjudication and the cause is remanded for further appropriate proceedings.
Judgment affirmed in part and reversed in part, and causeremanded.
KENNEDY and PETREE, JJ., concur.